<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARLIN TORRES,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 2:14-cv-1935 (SDW)<br><br>**OPINION**<br><br>April 16, 2015 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Marlin Torres' ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Donna A. Krappa's ("ALJ" or "ALJ Krappa") denial of Plaintiff's application for Social Security Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). Plaintiff, pursuant to 42 U.S.C. § 405(g), seeks review of the decision of the Commissioner denying Plaintiff's application for Social Security Disability Insurance Benefits.

This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons set forth in this Opinion, this Court finds that the Commissioner's decision is supported by substantial evidence and therefore must be **AFFIRMED**.

1

**I. PROCEDURAL AND FACTUAL HISTORY**

*A. Procedural History*

On August 6, 2010, Plaintiff filed an application for Social Security Benefits. (Tr. 152-58.) On March 17, 2011, Plaintiff's claim for Social Security Benefits was denied. (Tr. 84-88.) Plaintiff filed a Request for Reconsideration, which was denied on August 16, 2011. (Tr. 89; 90-92.)

On August 19, 2011, Plaintiff requested a hearing by an ALJ, which was subsequently held on June 30, 2012. (Tr. 35-79; 93.) On October 24, 2012, ALJ Krappa denied Plaintiff's application for Social Security Benefits. (Tr. 15-34.) On December 19, 2012, Plaintiff requested a review of the ALJ's decision, which the Appeals Council denied on January 24, 2014. (Tr. 1-14.)

Plaintiff appealed the Appeals Council's denial to this Court on March 27, 2014. (Compl.)

*B. Personal and Employment History*

Plaintiff is a fifty-three-year-old female. (Tr. 80.) She was born in Newark, New Jersey, moved to Puerto Rico at the age of six, and returned to the mainland after she finished the eleventh grade. (Tr. 42-43.) Plaintiff lives with her husband, son, and daughter-in-law. (Tr. 44.) Plaintiff's husband works in the Department of Public Works for the City of Summit. (Tr. 42.)

Plaintiff utilizes her driver's license to drive locally. (Tr. 43-44.) Plaintiff's daily activities include performing light work at home, while Plaintiff's husband vacuums, sweeps, and mops. (Tr. 209). Plaintiff does not report any difficulties in maintaining social relationships. (Tr. 211.)

Plaintiff has a work history that includes work as cashier and childcare assistant. (Tr. 215.) From approximately 1996 to 2001 Plaintiff worked as a Teacher's Aide for the Trinity Christian Academy, where she assisted teachers and students. (Tr. 215-16.) Between the years of 1995 to 1996, 2001 to 2002, and 2003 to 2005, Plaintiff worked as a cashier at various stores. (Tr. 178,

2

215.) From 2005 to 2007, Plaintiff assisted in childcare for Community Coordinated Child Care. (Tr. 215, 220.) From 2007 to 2009, Plaintiff worked as a kitchen helper for a private Day Care Center. (Tr. 215, 221.) Plaintiff reports that she has never been fired or laid off from any job, and easily gets along with authority figures. (Tr. 213.) Plaintiff stopped working on July 1, 2009 because of her medical conditions. (Tr. 177.)

*C. Medical History*

In a medical report by Manuela Pedra-Nobre, M.D., ("Dr. Pedra-Nobre") dated November 22, 2010, Plaintiff was diagnosed as having fibromyalgia, osteoarthritis of the knees, and low back pain syndrome. (Tr. 404). Dr. Pedra-Nobre also indicated that Plaintiff was able to walk at a reasonable pace and without any handheld assistive device. (Tr. 408.) Dr. Manuela Pedra-Nobre also noted that she administered injections in Plaintiff's right knee to relieve discomfort. (Tr. 183.) When asked whether she would opine on Plaintiff's ability to do work related activities, Dr. Pedra-Nobre declined to give a response. (Tr. 405, 499.)

Dr. Pedra-Nobre referred Plaintiff to physical therapy. (Tr. 291-94.) Plaintiff was first seen for physical therapy on June 25, 2010 and was seen for a total of six visits. (Tr. 294.) Because Plaintiff suddenly discontinued treatment, she was discharged from physical therapy on September 3, 2010. (Tr. 294.)

Dr. Eric Freeman first examined Plaintiff on June 24, 2010. (Tr. 281.) Dr. Freeman is a pain management specialist who treated Plaintiff for her wrist, back, and neck pain. (Tr. 414-27.) Dr. Freeman also noted that Plaintiff was able to walk without the use of an assistive device. (Tr. 284). Dr. Freeman also did not provide an opinion regarding Plaintiff's ability to perform work-related activities. (Tr. 282, 416.) Dr. Freeman diagnosed Plaintiff with lumbar radiculitis, lumbar stenosis with associated disc degeneration, and fibromyalgia. (Tr. 415.)

3

Plaintiff was also examined by Dr. Yitzhak Berger.  (Tr. 374-99).  On March 3, 2010, Dr. Berger diagnosed Plaintiff with Stress Urinary Incontinence ("SUI"). (Tr. 386.)  Dr. Berger prescribed medications and recommended that Plaintiff do Kegel exercises.  (Tr. 386-87).

Plaintiff also claims that she suffers from migraine headaches. (Tr. 53.)  On June 8, 2010, Plaintiff underwent a brain MRI.  (Tr. 301.)  The MRI showed that there were scattered nonspecific, non-enhancing T2 flair white matter hyperintensities, which may be observed with the occurrence of migraine headaches.  (Tr. 301.)

Plaintiff also claims to have problems with anxiety and that she is unable to manage her stress levels. (Tr. 213.)  Plaintiff reports taking Klonopin for her anxiety.  (Tr. 276.)

**II. DISCUSSION**

*A.  Standard of Review*

This Court has Jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  This Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision.  42 U.S.C. § 405(g); *Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate."  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).  Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).  Accordingly, the standard places a significant limit on the district courts' scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitute[ing] its conclusions for those of the fact-finder."  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).  Therefore, even if this Court would have decided the matter

differently, it is bound by the ALJ's finding of fact so long as they are supported by substantial evidence. *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Fargonli v. Halter*, 247 F.3d 34, 35 (3d Cir. 2001)).

## B. The Five-Step Disability Test

The Social Security Act gives the Social Security Agency authority to promulgate regulations that provide for the payment of a disabled child's insurance benefits if the claimant is 18 years old or older and has a disability that began before attaining the age of 22. 20 C.F.R. § 404.350. A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382.

An individual will be considered disabled under the Social Security Act ("Act") if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 432(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his ailment have been "established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis to determine disability under the Act. *See* 20 C.F.R. § 404.1520; *see also Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479-80 (3d. Cir. 2007). Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"), which is defined as work that

involves doing significant and productive physical or mental duties for pay or profit. *See* 20 C.F.R. §§ 404.1520(b). If the claimant engages in SGA, she is not disabled, for purposes of receiving social security benefits, regardless of the severity of his impairment(s). 20 C.F.R. § 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two. *Id.* § 416.920.

If the claimant establishes that she is not currently engaged in SGA, the ALJ then determines whether, under step two, the claimant suffers from a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. *Id.* § 416.921. If a severe impairment or severe combination of impairments is not found, the claimant is not disabled. If the ALJ finds a severe impairment or combination of impairments, she then proceeds to step three, where she must determine whether the claimant's impairment(s) is equal to or exceeds one of those included in the Listing of Impairments in 20 C.F.R. Part 404 Subpart P, App. 1. 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

Under step three, if an impairment or combination of impairments meets the statutory criteria of a listed impairment, as well as the duration requirement, the claimant is disabled, and entitled to benefits. *Id.* § 416.920(d). However, if the claimant's impairment(s) do not meet the severity of the listed impairment, or if the duration is not sufficient, the ALJ proceeds to the next step. *Id.* § 416.920(e).

Before undergoing the step four analysis, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his

impairments. *Id.* § 416.920(e). The ALJ considers all impairments in this analysis, not just those deemed severe. *Id.* §§ 404.1520, 416.920(e), 416.945; SSR 96-8p. After determining a claimant's RFC, the ALJ must determine, under the step four analysis, whether the claimant has the RFC to perform the requirements of his past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(f). If the claimant is able to perform his past relevant work (or alternatively does not have past relevant work), she will not be found disabled under the Act.

If the claimant is unable to resume his past work, the disability evaluation proceeds to the fifth and final step. At step five, the ALJ must determine whether the claimant is able to do any other work considering his RFC, age education, and work experience. *Id.* § 416.920(g). Unlike the first four steps of the analysis, where the claimant bears the burden of persuasion, if the claimant establishes that his impairment prevents him from performing any of his past work, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).

C. *Analysis*

The ALJ found that a significant number of jobs exist in the national economy to accommodate Plaintiff's exertional demands of light work and, therefore, that Plaintiff is not disabled. (Tr. 25.) This Court finds that ALJ Krappa's disability determination is supported by substantial evidence in the administrative record.

At step one, ALJ Krappa found that Plaintiff has engaged in SGA since December 1, 2009. (Tr. 23.) At step two, the ALJ determined that Plaintiff suffers from a severe impairment or combination of impairments. (Tr. 23.) According to ALJ Krappa, the following medically determinable impairments, either individually or in combination, significantly limit Plaintiff's

ability to do one or more basic work activities: "obesity; a disorder of the back; fibromyalgia; sinusitis; headaches; anxiety; benign positional vertigo; and osteoarthritis of the knee." (Tr. 23.)

At step three, ALJ Krappa found that Plaintiff's impairments or combination of impairments do not equal to or exceed those in the Listing of Impairments in 20 C.F.R. Part 404 Subpart P, App. 1. 20 C.F.R. §§ 416.920(d), 416.925, 416.926. At this step, the ALJ is not required "to use particular language or adhere to a particular format in conducting [her] analysis." *Jones*, 364 F.3d at 505. Overall, ALJ Krappa's decision sufficiently considers the appropriate factors in reaching the conclusion that Plaintiff does not meet the requirements listed in 20 C.F.R. Part 404 Subpart P, App. 1. *Id.*

Plaintiff did not carry her burden of proving that her impairments or combination of impairments equal or exceed the listed impairments because the record does not contain sufficient clinical signs or laboratory findings listing the level of severity of Plaintiff's impairments. (Tr. 24.). *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). Specifically, the ALJ found that medical listing 1.02A, which pertains to major dysfunction of a weight-bearing joint, is inapplicable because there is no evidence that Plaintiff needs a handheld assistive device to ambulate effectively. (Tr. 24.) The evidence in the record supports this finding, as Dr. Pedra-Nobre noted that Plaintiff can walk a reasonable pace and without the use of a hand-held assistive device. (Tr. 408.) Likewise, Dr. Freeman indicated that Plaintiff is able to walk without the use of an assistive device. (Tr. 284).

Plaintiff's additional impairments also fail to meet the requisite level of severity. As to Plaintiff's back disorder, the ALJ correctly found that there is no evidence indicating a nerve root compromise required to meet the criteria under the medical listing 1.04. (Tr. 24.) The ALJ also appropriately discounted the severity of Plaintiff's migraine headaches because the evidence in the

8

record does not support the alleged severity. (Tr. 24.)  The ALJ also adequately considered the effects of Plaintiff's anxiety. (Tr. 24-25.)  Plaintiff was found to have only a moderate restriction in daily living because she acknowledged that she is able to take care of her personal needs. (Tr. 24-25).  Plaintiff also has a moderate limitation in social functioning because Plaintiff did not report any significant difficulties in maintaining social relationships. (Tr. 25.)  Finally, Plaintiff has moderate deficiencies in concentration, persistence, or pace because Plaintiff has the concentration to take care of her personal needs, watch television, and respond to questions at the hearing in an "appropriate and timely manner." (Tr. 25.)

Contrary to Plaintiff's argument, the ALJ sufficiently considered Plaintiff's obesity. Notwithstanding that "no treating or examining medical source has attributed additional or cumulative limitations to [Plaintiff's] obesity," at this step and later steps the ALJ explicitly stated that she considered the effect of Plaintiff's obesity in reaching her conclusions. (Tr. 24.) *See* Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (2009) (noting that the ALJ is not required to use "magic words" in her analysis). The ALJ considered the effect Plaintiff's obesity would have in causing or contributing to co-existing impairments such as "affecting a weight-bearing joint [which] may have more pain and limitation than might be expected from arthritis alone." (Tr. 24.) The ALJ also noted that obesity "may limit [an] individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week." (Tr. 24.)

Before undergoing the analysis under step four, 20 C.F.R. §§ 404.1520(e), 416.920(e), ALJ Krappa determined that Plaintiff's RFC demonstrated that Plaintiff "was capable of the exertional demands of light work as defined under the regulations." (Tr. 25.)  Specifically, the ALJ found that Plaintiff was occasionally able to lift and carry 20 pounds and frequently able to lift and carry 10 pounds. (Tr. 25.)  Plaintiff was able to sit or stand for six hours in an eight-hour workday. (Tr.

25.) Plaintiff was also able to perform unlimited pushing and pulling within the weight restriction given in an environment that required no use of ladders, ropes, or scaffolds. (Tr. 25.) Plaintiff was able to perform jobs that are unskilled and repetitive. (Tr. 25.)

ALJ Krappa's RFC finding is supported by substantial evidence. When determining the intensity and persistence of the Plaintiff's symptoms, the ALJ must consider whether "objective medical evidence and other evidence" support Plaintiff's claims regarding the intensity and persistence of her symptoms. 20 C.F.R. § 404.1529(a). It is important to note that none of Plaintiff's doctors provided an opinion regarding Plaintiff's ability to work. Moreover, the ALJ's decision is largely consistent with the Agency's medical consultant's opinion on Plaintiff's RFC. (Tr. 252-59.) In a disability worksheet submitted to the Agency, a medical consultant noted that "additional evidence is needed to fully assess the severity of the claimant's condition." (Tr. 263.) Plaintiff's claim that she is completely unable to work due to her limitations is simply not supported by the record as a whole.

At the fourth step of the analysis, the ALJ analyzed whether Plaintiff has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(f). The ALJ found that Plaintiff does not have past employment that qualifies as "prior relevant work" pursuant to the Regulations. (Tr. 29); *see* 20 C.F.R. §§ 404.1520(e)-(f), 404.1568, 416.920(f). [1]

---

[1] 20 C.F.R. § 404.1565 provides, in relevant part:

> Work experience means skills and abilities you have acquired through work you have done which show the type of work you may be expected to do . . . . We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity . . . If you have no work experience or worked only "off-and-on" or for brief periods of time during the 15–year period, we generally consider that these do not apply.

10

At the fifth step, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). The ALJ must conclude that Plaintiff is capable of performing alternative SGA in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). Here, the ALJ's finding that Plaintiff is capable of performing other SGA present in the national economy is supported by substantial evidence. (Tr. 21); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).

In reaching her decision, ALJ Krappa considered the following facts: First, Plaintiff was forty-eight years old on the date of the alleged onset of the disability, placing her in the "individual closely approaching advanced age" category according to federal regulations. (Tr. 29). *See* §§ 404.1563(c), 416.963(c) (stating that if claimant is under 50, age is not considered to seriously affect ability to adjust to other work). Second, Plaintiff has a limited education and is able to communicate in English. (Tr. 29.) Fourth, Plaintiff has the RFC for light work. (*Id.*) Finally, the vocational expert considered Plaintiff's RFC, age, education, and work experience and found that a significant amount of jobs exist for someone such as Plaintiff, including the jobs of mail clerk, counter attendant, and ticket seller. (Tr. 30, 66-67.)

Although Plaintiff argues that the ALJ failed to consider all of Plaintiff's "credibly established mental limitations" at the fifth step, ALJ Krappa's application of Plaintiff's RFC at the fifth step is an implicit consideration of Plaintiff's credible mental limitations. (Tr. 26-28.) In the analysis before reaching the fourth step, ALJ Krappa considered Plaintiff's mental limitations in determining Plaintiff's RFC. (Tr. 26-28.) As discussed above, ALJ Krappa's RFC finding at the fourth step, its application in the fifth step analysis, and the conclusion that Plaintiff was "not disabled" was supported by substantial evidence.

11

## III. CONCLUSION

Because this Court finds that the ALJ's decision is supported by substantial evidence in the record, the Commissioner's disability determination is **AFFIRMED**.  An appropriate order will follow.

s/ <i>Susan D. Wigenton</i><br>
**SUSAN D. WIGENTON**<br>
**UNITED STATES DISTRICT JUDGE**

Orig:  Clerk
cc:    Magistrate Judge Steven C. Mannion
       Parties